**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

FREDA FINLEY                                                          Plaintiff

v.                             4:05CV00863 WRW/JFF

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration,                                              Defendant

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

This recommended disposition has been submitted to United States District Judge William R. Wilson. The parties may file specific written objections to these findings and recommendations and must provide the factual or legal basis for each objection. An original and two copies of the objections must be filed with the Clerk no later than eleven (11) days from the date of the findings and recommendations. A copy must be served on the opposing party. The District Judge, even in the absence of objections, may reject these proposed findings and recommendations in whole or in part.

### DISPOSITION

Plaintiff, Freda Finley, has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for Disability Insurance benefits. Both parties have submitted appeal briefs and the case is ready for decision.

The Court's function on review is to determine whether the

Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997); see also, 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Reynolds v. Chater, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Plaintiff alleged disability based on high cholesterol and pain in her hands, arms and feet. (Tr. 56) The Commissioner found that

she was not disabled within the meaning of the Social Security Act. The only issue before this Court is whether the Commissioner's decision that Plaintiff was not disabled within the meaning of the Act is supported by substantial record evidence.

After conducting an administrative hearing, the Administrative Law Judge[1] (ALJ) concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act at any time through January 3, 2005, the date of his decision.[2] (Tr. 188-89)  On May 24, 2005, the Appeals Council declined to assume jurisdiction, making the ALJ's decision the final decision of the Commissioner. (Tr. 178-80)  Plaintiff then filed her complaint initiating this appeal. (Docket #2)

After consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

Plaintiff was 55 years old at the time of the latest hearing, and thus 50 as of her alleged onset date and 54 at her date last insured. (Tr. 210)  She completed the eighth grade in school. (Tr. 62, 210)  She has past relevant work as a hotel maid, machine operator and truck driver. (Tr. 66-72, 185, 187C)

---

[1] The Hon. Mark S. Anderson.

[2] Plaintiff was last insured for the purposes of Title II March 31, 2003. (Tr. 48, 185)  In order to receive Disability Insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status.  42 U.S.C. §§ 416(i), 423(c) (1991); Pyland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998); Battles v. Sullivan, 902 F.2d 657, 659 (8th Cir. 1990).

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i) (2004). If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience. Id. at § 404.1520(b).

Step 2 involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. Id. at § 404.1520(4)(ii). If not, benefits are denied. Id. A "severe" impairment significantly limits a claimant's ability to perform basic work activities. Id. at § 404.1520(c).

Step 3 involves a determination of whether the severe impairment(s) meets or equals a listed impairment. Id., § 404.1520(a)(iii). If so, and the duration requirement is met, benefits are awarded. Id.

If the claimant does not meet or equal a Listing, then a residual functional capacity assessment is made. Id., § 404.1520(4). This residual functional capacity assessment is utilized at Steps 4 and 5. Id.

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity to perform past relevant work. Id., § 404.1520(4)(iv). If so, benefits are denied. Id.

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education

and work experience.  <u>Id.</u>, § 404.1520(4)(v).  If so, benefits are denied; if not, benefits are awarded.  <u>Id.</u>

The ALJ noted that Plaintiff was last insured for the purposes of Title II on March 31, 2003.  (Tr. 188)  He found that she had not engaged in substantial gainful activity since her alleged onset date. <u>Id.</u>  He found that Plaintiff had a "severe" impairment, disorder of muscle and connective tissue, but that she did not have an impairment or combination of impairments that met or equaled a Listing.  <u>Id.</u>  He judged that Plaintiff's allegations regarding her limitations were inconsistent with the weight of substantial evidence and not credible.  <u>Id.</u>

The ALJ found that Plaintiff retained the residual functional capacity for a wide range of light work.  <u>Id.</u>  He recognized that Plaintiff's past relevant work as a hotel maid and machine operator did not require the performance of work-related activities precluded by her limitations, and that her impairments did not prevent her performing that past relevant work.  <u>Id.</u>  Consequently, the ALJ concluded that Plaintiff was not disabled.  <u>Id.</u>

Plaintiff contends that the ALJ erred in not following the Appeals Council's Order to provide the consultative examiner with all of Plaintiff's medical records and then to rely on his opinion.  (Br. 8, 15-16)  In May 2000, a different ALJ issued a decision finding Plaintiff disabled.  (Tr. 97-99)  On its own motion, the Appeals Council vacated that decision and remanded the case for additional evaluation and determination.  (Tr. 109-11)  A second hearing was had

5

and the ALJ issued an unfavorable decision, which was ultimately appealed to this Court.  Finley v. Barnhart, 4:01CV537 WRW.  Upon motion of Defendant, that case was remanded pursuant to sentence 4 of 42 U.S.C. § 405(g).  (Docket #15)  The Appeals Council Order remanding the case to the ALJ stated, in pertinent part:

> Upon remand, the Administrative Law Judge will obtain additional evidence concerning the claimant's neurological impairment in order to complete the administrative record in accordance with the regulatory standards concerning consultative examinations and existing medical evidence. The Administrative Law Judge will obtain updated evidence from the claimant's treating sources.  The consultative examiner will be furnished with copies of the evidentiary record, including any updated reports received from the claimant's treating sources, prior to the performance of the consultative examination.  The treating sources and the consultative examiner will be asked to provide medical source statements about what the claimant can still do despite the impairments.

(Tr. 195-96)

On June 3, 2003, Plaintiff was examined by Lorne Ryan, M.D., neurologist.  (Tr. 202-03)  The report of that examination, in pertinent part, reads as follows:

> . . . .  The rest of the cranial nerves were intact.  She was edentulous.[3]  Motor testing was impossible to grade or to adequately assess with numbers due to collapsing, histrionic and hysterical weakness of all four extremities with the patient complaining of pain in all four extremities on all motions of activity. Her arms were held stiffly.  Her deep tendon reflexes were consequently suppressed.  None the less she had 2+ triceps jerks bilaterally.  Her biceps and triceps jerks were voluntarily suppressed.  She had 3+ knee and ankle jerks bilaterally. Her plantar responses were probably flexor but she had extreme withdrawal and did not like her feet touched or

---

[3]Toothless, having lost the natural teeth.  PDR Medical Dictionary 567 (2d ed. 2000).

> examined. None the less sensory testing to pin, position and vibration was normal. Tinel's and Phalen's signs were not present.[4] Her fine coordination on rapid alternating movements, finger tapping and finger to nose testing was performed adequately although slowly. Her gait was a nonneurologic gait with some guarding when she walked. Her Romberg was negative.
>
> . . . . She has a multitude of complaints but no objective neurologic findings. She has finding that are compatible with hysterical disorder or malingering. Although no medical records or tests were provided I doubt that they would have shed significant light on the etiology of her conditions. She has no impairments in her ability to sit, stand, walk. She has difficulty carrying and handling objects due to pain but her fine coordination is intact. She has no impairments in her ability to see, hear or speak. She has no impairments in her ability to travel. No diagnosis is established.

(Tr. 202-03)

Dr. Ryan completed a Medical Assessment of Ability to do Work-related Activities (Physical). (Tr. 204) She noted that Plaintiff could frequently lift/carry up to 100 pounds; she could frequently use her hands/feet/arms for grasping, fine manipulations, handling objects, push/pull/operate controls with her hands and feet and reach; she could climb, balance, stoop, crouch, kneel and crawl; she had unlimited hearing and speaking. Id.

Plaintiff's point is not well taken. Dr. Ryan indicated that,

---

[4] Diagnosis [of carpal tunnel syndrome] is indicated by a positive Tinel's sign, in which the tingling (paresthesia) is reproduced by tapping with a reflex hammer at the volar surface of the wrist over the site of the median nerve and carpal tunnel. Additional tests include wrist flexion maneuvers (e.g., Phalen's sign).

The Merck Manual 492 (17th ed. 1999).

7

although no other medical records were provided her, she doubted that they would have shed significant light on the etiology of Plaintiff's conditions.  Indeed, additional medical evidence that would have been available to provide to Dr. Ryan is quite sparse.  Plaintiff was seen by Dr. Pledger on March 29, 1999; he assessed hand pain, possible carpal tunnel syndrome, and leg pain, unknown etiology. (Tr. 86-87) He saw her again July 15, 1999, again with hand pain; he wanted an electromyograph and nerve conduction studies of both arms to document or rule out carpal tunnel syndrome.  (Tr. 122-23)  Her nerve conduction studies were "borderline normal."  (Tr. 120-21)  "These findings are VERY minimal and of doubtful clinical significance." (Tr. 120)(emphasis in original)  On February 15, 2001, Patricia A. Knott, M.D., performed a neurological evaluation. (Tr. 125-28) Her impression was hypercholesterolemia, possible carpal tunnel syndrome, complaints of dizziness and headaches and complaints of pain in her hands, arms and feet.  (Tr. 127)  She thought an evaluation by a neurologist might be of benefit.  (Tr. 128)  That examination was performed by Dr. Ryan.  The lack of these additional medical records at the time that Dr. Ryan performed her thorough examination is insignificant.

It is not the task of this Court to review the evidence and make an independent decision.  Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings.  The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ.  E.g.,

Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996); Pratt v. Sullivan, 956 F.2d 830, 833 (8th Cir. 1992).

There is ample evidence in the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. Richardson v. Perales, 402 U.S. at 401; see also Reutter v. Barnhart, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error.

THEREFORE, the Court hereby affirms the final determination of the Commissioner and dismisses Plaintiff's complaint with prejudice.

IT IS THEREFORE RECOMMENDED that the final determination of the Commissioner be affirmed and that Plaintiff's complaint be dismissed with prejudice.

DATED this 20th day of June, 2006.

    /s/John F. Forster, Jr.
UNITED STATES MAGISTRATE JUDGE